IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALISA J. S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-02201-DGW[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.[3]

## Procedural History

Plaintiff filed a prior application for disability benefits, which was denied on December 19, 2014. (Tr. 117). Plaintiff reapplied for benefits in May 2015, alleging disability beginning on December 1, 2011. (Tr. 122). After holding an evidentiary

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 12, 16.

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

hearing, the Administrative Law Judge (ALJ) denied the application for benefits in a decision dated November 24, 2017. (Tr. 35-45). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ's physical residual functional capacity (RFC) assessment did not comport with SSR 96-8p in that the ALJ himself interpreted the record, did not adequately explain the basis for her findings, and ignored evidence.

2. The ALJ failed to develop the record by omitting evidence that comprised an almost two-year gap immediately preceding the evidentiary hearing.

3. The ALJ did not adhere to SSR 16-3p when she failed properly assess plaintiff's subjective allegations.

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and

(5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.*  The plaintiff bears the burden of proof at steps 1–4.  *Ibid.*  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.  *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  However, while judicial

review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar/thoracic spine and scoliosis.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level, limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional stooping; and frequent crouching, crawling, kneeling, and climbing ramps or stairs. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was not disabled because she was able to do her past relevant work as a sterilization technician/medical sterilizer as that job is generally performed in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1982 and was 29 years old on the alleged onset date. (Tr. 144). Plaintiff submitted a function report in which she complained that she could not sit or stand without pain and constantly needed to change positions. She stated

that this pain worsened daily and some days, she could not get out of bed. She claimed when she had a job, she missed one day per week due to pain. (Tr. 279). During a typical day, plaintiff said that she would bring her child to school, go back home to take a hot shower, get dressed, and then recline on a heating pad. (Tr. 280)

Plaintiff admitted preparing simple meals, driving, and grocery shopping bimonthly for 15 minutes each trip. (Tr. 281-282). She stated her mother and son took care of most of the household chores. She said that her mother helped with meals and taking care of her child. (Tr. 280-281). Plaintiff claimed that she could not lift more than 4 pounds, and could not squat, bend, or kneel. She reported that she could not stand for more than 10 minutes without needing to move and could not walk further than a city block. She also complained that when she sat down, she had to change positions often. (Tr. 284).

Plaintiff submitted a disability report in February 2016 stating that she had an upcoming appointment at the Barnes Jewish Hospital spine clinic in May. (Tr. 293). In a report of contact submitted in February 2017, plaintiff reported that she had a new family doctor, Dr. James Turner, that she first visited in January of that year. She also reported an upcoming appointment with rheumatologist Dr. Linda Grismer in March of that year. (Tr. 299).

2. **Evidentiary Hearing**

Plaintiff was not represented by an attorney at the evidentiary hearing in November 2017. (Tr. 53). She was 65 ¾ inches tall and weighed 125 pounds. (Tr 62). She lived with her son. (Tr. 59).

Plaintiff had not worked since December 2011, when she was terminated for

missing work due to her back pain. (Tr. 55). She earned an associate degree in human services in 2013 and obtained a certificate as a teacher's aide. (Tr. 56). Plaintiff said that her current doctor was Dr. Turner. She also reported seeing a pain management specialist. (Tr. 58). On a typical day, she stated she would bring her son to school and return home to take a hot shower, take her pain medication, and recline on heating pads. She would stay reclined most of the day. She would then pick her son up in the afternoon, help him with his homework, feed him dinner, and put him to bed before going to sleep. (Tr. 59).

Plaintiff stated that her son helped her with the laundry and vacuuming. She said she washed dishes with frequent breaks. She admitted to preparing simple meals, but they also ate meals prepared by her mother. Plaintiff reported that her mother also helped with household cleaning. (Tr. 60-61). She admitted to grocery shopping one to two times weekly for no more than 15 minutes. (Tr. 62-63).

Plaintiff testified that she cannot work due to the pain in her spine that radiated from her left leg and toes and into her right hip. (Tr. 63). Plaintiff stated that she could possibly lift five pounds and she could stand for about 5 minutes before needing to sit down. She said she could sit for still for about 5-10 minutes before needing to adjust positions. (Tr. 64). She claimed she had pain in her hands for which she was seeing a rheumatologist. (Tr. 65).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

Plaintiff claimed her back pain started at 14 years old when she had a horse

accident and a swimming accident. She was diagnosed with spondylolisthesis, scoliosis, and spondylolysis. According to plaintiff, she saw physicians at Shriners' Hospital and the University of Chicago. She also saw spine surgeons that recommended a lumbar fusion, which she declined. (Tr. 363). She attended physical therapy, but it aggravated her pain, so she stopped attending. (Tr. 345).

In April 2012, plaintiff saw her primary care physician (PCP), Dr. Rahat Sheikh. Plaintiff complained that she twisted her left forearm and had some pain. She also reported having chronic back pain. Dr. Rahat treated plaintiff with Voltaren and referred her a pain medicine specialist. (Tr. 414). Later that month, plaintiff was seen by Scott Williamson, an advanced practicing nurse (APN), upon referral from Dr. Sheikh. She complained of low back pain radiating from the lower cervical region to the sacral region, bilateral flank pain, and thigh pain. She reported pain of a 3 to 4 on a 1 to 10 scale, which was exacerbated during periods of walking, standing, lifting, and sitting. She was prescribed Vicodin. An MRI demonstrated a spondylolisthesis defect at L5-S1 and some desiccated degenerative disc disease at L3-L4. X-rays showed subluxation at L5 from 7.2 mm in 2008 to 13.2 mm in 2010, which was assessed as at least a grade 2 or 3 spondylolisthesis. There was also narrowing at the L5 interspace. Her physical exam demonstrated most of her pain was with lumbar extension and rotation, with a 75% restriction of right lateral bending, a 75% restriction with extension, and about a 25% restriction with left lateral bending. (Tr. 345-346, 365).

In June 2012, plaintiff saw Williamson again. Williamson noted that her spondylolisthesis was "about a grade 3." She was prescribed Norco and directed to

follow up. (Tr. 347). In May 2014, plaintiff saw a specialist, Dr. Ricardo Fontes, for her back pain. Dr. Fontes reviewed a February 2014 MRI of her lumbar spine that demonstrated grade 2 spondylolisthesis. (Tr. 329-330).

In March 2015, plaintiff was seen by David Grazaitis, APN, upon referral by her PCP. She complained that pain radiated from her shoulders to her left leg. (Tr. 350). Her left leg had a slight limp when she walked. Range of motion was measured using a pain index of 0 to 4. She could flex her spine 20 degrees before her pain increased from 0 to 4, while extension to 5 degrees increased her pain to 4. Bending forward, she could twist 30 degrees on the right with pain of 2 and on the left 45 degrees with pain of 2. Grazaitis ordered a new x-ray and MRI; and referred plaintiff to Barnes Hospital for consultation with a specialist. She continued to take prescribed Vicodin. (Tr. 350-351).

In April 2015, Grazaitis met with plaintiff after having reviewed the ordered MRI and x-rays of her lumbar spine. (Tr. 352, 353, 354). He noted the MRI showed changes in plaintiff's spine that merited consult with a neurosurgeon. (Tr. 354). On the MRI, he wrote "[s]pondylolisthesis is greater Than 50% which is greater Than MRI two yrs [sic] ago. Decreased Mobility." (Tr. 490). Grazaitis' September 2015 note commented on plaintiff's status since her appointment with Dr. Fessler, stating, "[s]ince then, she had developed some abnormalities in the spine including an L5 sacralization and unfortunately a severe aggravation of her spondylolisthesis to approximately 60%." (Tr. 491).

In December 2015, state agency consultant Dr. Peter Sorokin examined plaintiff. (Tr. 499). Plaintiff complained of continuing pain in her lower back that

was exacerbated from sitting, standing, crouching, stooping, and twisting. (Tr. 500). Dr. Sorokin noted that plaintiff did not have an antalgic gait. (Tr. 501). Regarding the lumbar spine, Dr. Sorkin found plaintiff's flexion was limited to 10 degrees (normal was 60 degrees); flexion accounting for hip flexion was 30 degrees (normal, 90); extension was limited to 0 degrees (normal, 25); and right and left lateral bending were each limited to 5 degrees (normal, 25). (Tr. 504). He found plaintiff did not need or use an assistive device for walking. (Tr. 502). He stated plaintiff had no difficulty in walking on her toes; walking on her heels; squatting and rising; tandem walking; and getting on/off the exam table. (Tr. 502-503).

### 4. State Agency RFC Assessments

In August 2015, acting as a state agency consultant, Dr. Ranga Reddy assessed plaintiff's RFC based on a review of the file materials. She found that plaintiff's statements about her abilities were only partially credible and she could do work at the light exertional level. (Tr. 126-129). In January 2016, acting as a state agency consultant, Dr. Richard Lee Smith also assessed plaintiff's RFC based on a review of the file materials. Dr. Smith largely agreed with Dr. Reddy's findings. (Tr. 150-152, 154).

## Analysis

Plaintiff argues that the ALJ ignored evidence in her RFC findings that would undermine her conclusion. In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). While the ALJ need not discuss every piece of evidence in the record, the ALJ may not

ignore an entire line of evidence that is contrary to his findings. *Ibid.* (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski,* 245 F.3d at 888). Otherwise, it is impossible for a reviewing court to make an informed review. *Golembiewski,* 322 F.3d at 917 (citing *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000)).

Plaintiff's accusation that the ALJ ignored evidence of reduced ranges of motion by APN Grazaitis holds water. In her decision, the ALJ stated that, "[a]lthough the claimant demonstrated some reduced ranges of motion in the lumbar region, ranges of motion were otherwise within normal limits throughout" when discussing Dr. Sorkin's findings. (Tr. 41). This discussion of range of motion results is completely lacking, and fails to mention Grazaitis' results nine months earlier. Had the ALJ discussed the results in detail, it would have exposed the fact that extension of plaintiff's lumbar spine had decreased to 0 degrees, while right and left bending also decreased. This entire comparison and trend of reduced motion is missing because the ALJ did not mention a single range of motion assessment figure from the medical records.

The ALJ ignored other evidence as well. The ALJ omitted any discussion of plaintiff's diagnosis of spondylolisthesis. Plaintiff's condition was mentioned throughout the medical record, including in notes from her PCP, Dr. Sheikh, and the radiology reports.

Furthermore, an ALJ has a duty to develop a full and fair record, and this duty is enhanced when the plaintiff is not represented by counsel. In that circumstance, "the ALJ must 'scrupulously and conscientiously [ ] probe into, inquire of, and explore

for all the relevant facts.'" *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), citing *Thompson v. Sullivan*, 933 F.2d 581, 585-586 (7th Cir. 1991). Here, in her disability report submitted in February 2016, plaintiff listed an upcoming appointment at Barnes Jewish Hospital in May of that year. At the hearing in November 2017, the ALJ never asked plaintiff about that appointment, nor did she attempt to develop the record by obtaining records from that appointment. In her testimony at that hearing and in the administrative record, plaintiff also mentioned that her new family doctor was Dr. James Turner. She additionally stated that she saw a pain management specialist. The ALJ never discussed obtaining records from these sources during the hearing. These instances show that the ALJ failed to develop a full and fair record for plaintiff's case.

Moreover, while it is appropriate for the ALJ to consider daily activities when evaluating credibility, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). The ALJ here misconstrued information and made attenuated connections between plaintiff's activities and her exertion level in an apparent attempt to dismiss the bulk of plaintiff's subjective symptom allegations.

Most glaring, the ALJ cited plaintiff's report of moving of furniture as an example that her statements about her disability were not entirely consistent with the

medical record. (Tr. 41). However, the record reveals only one instance of plaintiff reporting moving furniture, which was in a doctor's note **before** plaintiff's alleged onset date. (Tr. 404). The ALJ further stated that plaintiff attended to her own personal care, prepared her own meals, shopped in stores, and managed her own finances. (Tr. 40). The ALJ did not mention plaintiff's claims that she relied on her mother to help with meals, or that her mother and son took care of most of the household chores. The ALJ also did not mention that plaintiff alleged that she had to limit her grocery shopping to 15 minutes trips, twice per week. The ALJ failed to acknowledge and account for these crucial differences and additional facts with respect to plaintiff.

The lack of evidentiary support in this case requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C.

§405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   August 9, 2019.**

*Donald Wilkerson*

**DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE**